UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

GYULA JANOS JAKUBIK,

                     Petitioner,

      -v-

EVA SCHMIRER,

                     Respondent.
------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/9/13

13 Civ. 4087 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

Before the Court is D.T.J.'s motion to intervene through her next friend, Fr. Christian Gobel, in this case, in which her father, Gyula Janos Jacubik, has petitioned for her return to Hungary under the Hague Convention on the Civil Aspects of International Child Abduction ("Hague Convention" or "Convention") and the International Child Abduction Remedies Act, 42 U.S.C. §§ 11601 *et seq.* *See* Dkt. 11 ("Motion to Intervene"). Jacubik ("Petitioner") opposes this motion. *See* Dkt. 12 ("Opposition to Motion to Intervene"). Respondent has not taken a position on the motion. For the reasons that follow, the motion is granted.

I. **Intervention as of Right**

Federal Rule of Civil Procedure 24(a)(2) provides that "[o]n timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." The Second Circuit has set out a four-part test, each part of which is required for intervention as of right:

> In order to be entitled to intervene as of right under Rule 24(a)(2), "an intervenor must show that: (1) the application is timely; (2) the applicant claims an interest relating to the property or transaction which is the subject matter of the action; (3) the protection of the interest may as a practical matter be impaired by the disposition of the action; and (4) the interest is not adequately protected by an existing party.

*St. John's Univ., N.Y. v. Bolton*, 450 F. App'x 81, 83 (2d Cir. 2011) (quoting *Restor–A–Dent Dental Labs., Inc. v. Certified Alloy Prods., Inc.*, 725 F.2d 871, 874 (2d Cir. 1984)).

D.T.J. has met each of these requirements. Her application to intervene is timely: It came just three business days after counsel was appointed to represent her and one day after counsel's initial conversation with D.T.J. She has an obvious interest in this litigation: It will determine whether D.T.J., age 15, will be repatriated to Hungary for custody proceedings. Her interest may be impaired by the outcome of this action: She claims an interest in remaining in the United States, and a ruling (in either direction) will profoundly affect her.[1]

Finally, D.T.J.'s interests are not identical to those of her mother, Respondent Eva Schmirer ("Respondent"), and the Court does not believe they are necessarily adequately represented by Respondent. To be sure, D.T.J., like Respondent, intends to assert affirmative defenses under Articles 12 and 13 of the Hague Convention. But Respondent's assertion of, and articulation of facts and arguments bearing on, those defenses would not necessarily suffice to protect D.T.J.'s interests. It is true, as Petitioner notes, that "disagreement . . . about trial strategy" is an insufficient reason to permit a motion to intervene. *United States v. Yonkers Bd. of Educ.*, 902 F.2d 213, 218 (2d Cir. 1990). D.T.J.'s differing interest, however, implicates more

---

[1] In acknowledging D.T.J.'s stated preference, the Court, of course, expresses no view as to the merits of the underlying petition. The Court further recognizes that resolution of the petition is not "a determination on the merits of any custody issue," Hague Convention, art. 19; *see Mota v. Castillo*, 692 F.3d 108, 112 (2d Cir. 2012), but rather decides "whether a child should be returned to her country of habitual residence for custody proceedings," *Mota*, 692 F.3d at 112. But the decision as to that question will necessarily profoundly affect D.T.J., as it will decide whether she is to be returned to Hungary for the purpose of such proceedings.

2

than litigation strategy. D.T.J. will not only reinforce the defenses that her mother, the Respondent, has promised to pursue, that D.T.J. is settled here in the United States and that returning her to Hungary poses a "grave risk" to her. *See* Dkt. 5 ("Reply to Petition") at 3–4; Dkt. 7, Letter of June 26, 2013, from Adam S. Mintz to Judge Paul A. Engelmayer ("June 26 Letter"). Through counsel, D.T.J. also represents that she intends to assert a freestanding Article 13 defense, to wit, that "she objects to being returned . . . and has attained an age and degree of maturity at which it is appropriate to take account of her views." Motion to Intervene 9. Specifically, counsel represents that "D.T.J. will prove that she is a mature teenager whose views are thoughtful, rational, and altogether her own [and] should be given great weight." *Id.*; *see* Hague Convention, art. 13.

Important here, "[t]he age and maturity exception in the unnumbered provision of Article 13 . . . provides a sufficient basis to deny a petition." *Matovski v. Matovski*, No. 06 Civ. 4259 (PKC), 2007 WL 2600862, at *9 (citing *Blondin v. Dubois*, 238 F.3d 153, 167 (2d Cir. 2001)). "In this way, the Convention gives children the possibility of interpreting their own interests." *Matovski*, 2007 WL 2600862, at *8–9 (citing Hague Convention, Explanatory Report ¶ 30). Although it is conceivable that Respondent would also assert this defense, *see* Reply to Petition 5, that discrete defense was not listed among Respondent's intended defenses in the June 26 Letter which the parties submitted, reporting on their Court-ordered meet-and-confer. Further, even if Respondent were to assert that defense, D.T.J. is best positioned to assert it herself through her own counsel. And D.T.J.'s counsel has shown a welcome vigor in her initial work in this lawsuit. Unlike Respondent, D.T.J. has indicated an intention to retain a psychological expert, *see* Motion to Intervene 6, which may assist the Court in assessing D.T.J.'s Article 13 "age and maturity" defense. That retention may also assist the Court in assessing D.T.J.'s

3

Article 12 "now-settled" defense and Article 13 "grave risk" defense.[2] *See* Hague Convention, arts. 12, 13(b). Further, D.T.J.'s mother, the Respondent, has her own interests and perspective. It is plausible that Respondent, for her own reasons, might refrain from advancing other evidence, or making colorable arguments, that could assist her daughter to establish the Article 12 and 13 defenses.

Finally, as D.T.J.'s counsel points out, "[t]he child has a potential right to immigration remedies which are foreclosed to Respondent, and which have not been explored by Respondent." Motion to Intervene 7. D.T.J.'s counsel represents that she is "actively seeking" retention of an immigration expert. *Id.* at 6. As to this issue, it is possible that D.T.J.'s and Respondent's interests diverge. For the foregoing reasons, the Court concludes that D.T.J. has met all four prongs required in a motion to intervene as of right.

## II.     Permissive Intervention

D.T.J. has even more clearly met the standard required for a permissive intervention. *See* Fed. R. Civ. P. 24(b) (court may permit intervention by anyone who "has a claim or defense that shares with the main action a common question of law or fact," although "court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."). A district court has broad discretion under Rule 24(b). *See Restor-A-Dent*, 725 F.2d at 876. "The requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as

---

[2] In addition to raising affirmative defenses under Article 12, Article 13, and Article 13(b), D.T.J.'s counsel also proposes to challenge whether Petitioner has made out a *prima facie* case that D.T.J.'s removal from Hungary, by Respondent, was wrongful, arguing that "[p]etitioner was not actually exercising his custody rights at the time or removal, or he acquiesced in the cessation of those rights." Motion to Intervene 7–8; *see* Opposition to Motion to Intervene 4 n.5. Respondent, however, has already conceded the point, and those two parties have agreed that this lawsuit turns on whether an affirmative defense can be established. *See* June 26 Letter 2.

minimal." *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n.10 (1972) (citation omitted). The interests of D.T.J. in the litigation sufficiently outweigh any potential "costs to allowing the Child to become a party," *see* Opposition to Motion to Intervene 6. Moreover, the Court foresees no undue delay caused by the child's intervention: The trial date (June 22, 2013) and the pre-trial schedule, set by the Court mindful of the Convention's expectation that such proceedings conclude "within six weeks from the date of commencement of the proceedings," Hague Convention, art. 11, remains unmodified. Intervention under under Rule 24(b) is, thus, also merited.

## CONCLUSION

D.T.J.'s motion to intervene is granted. The Clerk of Court is directed to add D.T.J., through her next friend Fr. Christian Gobel, as a party to the case, to be represented by Jennifer Baum, Esq.

A status conference is set for July 12, 2013, at 2:30 p.m. in Courtroom 1305 of the Thurgood Marshall U.S. Courthouse, 40 Foley Square, New York, NY 10007.

SO ORDERED.

_Paul A. Engelmayer_
PAUL A. ENGELMAYER
United States District Judge

Dated: July 9, 2013
       New York, New York